In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-01-00013-CR
______________________________


RAYMOND MANNING, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 155th Judicial District Court
Austin County, Texas
Trial Court No. 99R-102


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Raymond Manning appeals his conviction of manslaughter. He was driving a truck
and ran into another vehicle. A jury found him guilty and assessed punishment at ten
years' imprisonment. In our original opinion in this case, we reversed his conviction and
remanded for a new trial because we concluded the trial court had erred by admitting
extensive testimony about a blood test that showed Manning was found with a metabolite
of cocaine in his blood. The Texas Court of Criminal Appeals held that our conclusion was
incorrect and that the evidence was admissible, and reversed to this Court with directions
to consider Manning's remaining points of error. 
Â Â Â Â Â Â Â Â Â Â Manning first contended the evidence was legally insufficient to support his
conviction. We concluded in our original opinion, even without the metabolite testimony,
the evidence was legally sufficient. He also contended the trial court erred by overruling
his request for an instruction to limit the jury's consideration of the evidence of the
metabolite in his blood. In our original opinion, we found the court's denial of that request
was not error. We will not now revisit our decision on those issues. 
Â Â Â Â Â Â Â Â Â Â Manning also contends the trial court erred by admitting reputation testimony during
the punishment hearing. Manning contends the court erred in allowing Lisa Schraeder, a
community supervision officer, to testify as a reputation witness because: 1) she did not
have substantial knowledge; 2) her knowledge of his reputation was not obtained before
the date of the offense; 3) her testimony was based solely on knowledge of specific acts;
and 4) the fact she did not discuss his reputation with anyone made her incompetent to
testify as a reputation witness. In our original opinion, we found the admission of the
testimony was error because the State failed to show the witness had the necessary
familiarity with Manning's reputation to justify admission of her testimony, but we did not
determine whether it was harmful error, because we had reversed on other grounds. 
Â Â Â Â Â Â Â Â Â Â Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a) (Vernon Supp. 2004) permits the
state and the defendant to offer evidence as to any matter the trial court deems relevant
to sentencing, including the defendant's general reputation, his or her character, and
opinions regarding her or his character. The trial court's decision to admit or exclude
evidence at the punishment phase is subject to review for an abuse of discretion. See
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).
Â Â Â Â Â Â Â Â Â Â As we stated in our original opinion, the requirement that the witness at the penalty
phase be substantially familiar with the defendant's reputation was removed by
amendment to Tex. R. Crim. Evid. 405(a) in 1990 and was not revived in Tex. R. Evid.
405(a).
Â Â Â Â Â Â Â Â Â Â Still, because the basis for the reputation hearsay exception is the reliability of the
synthesis of observations of the day-to-day activities of the accused, Wagner v. State, 687
S.W.2d 303, 313 (Tex. Crim. App. [Panel Op.] 1984) (op. on reh'g), a reputation witness
must be familiar with the defendant's reputation in some community. While it is not
necessary to ask specifically about the defendant's "reputation," Adanandus v. State, 866
S.W.2d 210, 226 (Tex. Crim. App. 1993), the witness' testimony must be based on
discussions with others concerning the defendant, or on hearing others discuss the
defendant's reputation, not just on personal knowledge. Turner v. State, 805 S.W.2d 423,
429 (Tex. Crim. App. 1991).
Â Â Â Â Â Â Â Â Â Â It has been held that discussions with other police officers are sufficient to qualify
a witness to testify regarding reputation. See id.; Martin v. State, 449 S.W.2d 257, 260
(Tex. Crim. App. 1970). However, the testimony may not be based solely on the charged
offense, the defendant's "rap sheet," or knowledge of specific acts. See Mitchell v. State, 
524 S.W.2d 510, 512 (Tex. Crim. App. 1975); Davis v. State, 831 S.W.2d 839, 844 (Tex.
App.âDallas 1992, pet. ref'd); see also Wagner, 687 S.W.2d at 313-14 (error to allow
reputation testimony based on allegation of one specific act); Frison v. State, 473 S.W.2d
479, 485 (Tex. Crim. App. 1971) (discussion of offense not improper as basis as long as
based on other discussions as well).
Â Â Â Â Â Â Â Â Â Â Before the State began its case-in-chief at the penalty phase, defense counsel
objected outside the presence of the jury to the State's intention to call Schraeder as a
reputation witness. On voir dire, Schraeder testified she was familiar with Manning's
reputation in the community. On cross-examination, responding to Manning's question
requesting to know the basis of her reputation testimony, Schraeder testified only as to her
personal knowledge that Manning had appeared in court for his conditional bond hearing
smelling of alcohol and with a blood alcohol concentration of .07, and that she had
received reports from supervising personnel that, while he was on conditional bond,
Manning tested positive twice for cocaine use. At the conclusion of questioning on voir
dire, Manning objected to Schraeder as an opinion or reputation witness because there
was insufficient predicate laid. This objection was overruled. Schraeder testified before
the jury that Manning appeared at a bond hearing smelling of alcohol and, after the court
overruled Manning's renewed objection, that Manning's reputation for being peaceful and
law-abiding was bad.
Â Â Â Â Â Â Â Â Â Â Manning contends the court abused its discretion in allowing Schraeder's reputation
testimony because the State failed to establish a proper predicate. Although Schraeder
testified she was familiar with Manning's poor reputation for being a peaceful and
law-abiding citizen, the cross-examination by Manning revealed this knowledge of
reputation was based only on Schraeder's one personal observation and two reports of
specific acts. Although the State argues Schraeder testified to discussions with the
supervising personnel that faxed the test results, the record indicates she received only
facsimiles reporting the results of the urine analysis tests. 
Â Â Â Â Â Â Â Â Â Â The test results are evidence of specific acts, and while it is not error to consider
specific acts in determining the reputation of the accused, alone they cannot combine with
personal knowledge to establish Schraeder's competence to testify as to Manning's
reputation. There is no evidence Schraeder discussed Manning with anyone, official or
civilian, within any community. Such a foundation is insufficient to establish the proper
predicate. Manning's question was broad enough that Schraeder should have provided
all the bases for her familiarity with Manning's reputation. The State failed to ask any
questions on redirect examination that might have established the proper predicate if
Schraeder had failed to provide a complete answer. The court, therefore, abused its
discretion in allowing Schraeder to testify that Manning's reputation for being peaceable
and law-abiding was bad. 
Â Â Â Â Â Â Â Â Â Â We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b).


 A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. Tex. R. App.
P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record
as a whole, it appears the error "did not influence the jury, or had but a slight effect," we
must conclude the error was not harmful and allow the conviction to stand. Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
Â Â Â Â Â Â Â Â Â Â In order to properly conduct a harm analysis under Tex. R. App. P. 44.2(b), we
conduct a harm analysis as a type of "other errors," and we must disregard the error unless
it "affect[ed] [appellant's] substantial rights." Tex. R. App. P. 44.2(b). For claims of
nonconstitutional error, the Texas Court of Criminal Appeals has held that "a conviction
should not be overturned unless, after examining the record as a whole, a court concludes
that an error may have had 'substantial influence' on the outcome of the proceeding." 
Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words, if we have
"a grave doubt" the result was free from the substantial influence of the error, then we must
reverse. Id. The court has explained that "grave doubt" means, "in the judge's mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to the
harmlessness of the error." Id. at 637-38, citing O'Neal v. McAninch, 513 U.S. 432, 435-36
(1995). Thus, "in cases of grave doubt as to harmlessness the petitioner must win." 
Burnett, 88 S.W.3d at 637.
Â Â Â Â Â Â Â Â Â Â In considering harm, we must review the entire record to determine whether the
error had more than a slight influence on the verdict. See King, 953 S.W.2d at 271, citing
Kotteakos v. United States, 328 U.S. 750, 776 (1946); Reeves v. State, 969 S.W.2d 471,
491 (Tex. App.âWaco 1998, pet. ref'd). If we find the error had more than a slight influence
on the verdict, we must conclude the error affected the defendant's substantial rights in
such a way as to require a new trial. Reeves, 969 S.W.2d at 491. As explained above,
if we have grave doubts about the error's effect on the outcome, we must remand. Id. 
Otherwise, we should disregard the error. Lopez v. State, 990 S.W.2d 770, 778 (Tex.
App.âAustin 1999, no pet.); Reeves, 969 S.W.2d at 491.
Â Â Â Â Â Â Â Â Â Â In the context of alleged error at the punishment phase, under Rule 44.2(b), we
therefore review the entire record to determine whether the error had more than a slight
influence on the penalty assessed. If we find that it did, we must conclude the error
affected the defendant's substantial rights in such a way as to require a new punishment
hearing. Otherwise, we disregard the error. Guerrero v. State, No. 10-00-217-CR, 2003
WL 21815380, atÂ *4 (Tex. App.âWaco July 23, 2003, no pet. h.); Flores v. State, 48
S.W.3d 397, 404-05 (Tex. App.âWaco 2001, pet. ref'd). We conclude from such review
the error did not have more than a slight influence on the penalty the jury assessed in this
case. 
Â Â Â Â Â Â Â Â Â Â First, Schraeder did not testify in front of the jury as to all the specific acts she
described on voir dire. Specifically, she told the jury Manning "had appeared in court with
a smell of alcohol on his breath." She did not testify to the jury about the .07 blood alcohol
concentration or about receiving reports he had tested positive for cocaine use. If
Schraeder's testimony in front of the jury as a reputation witness had included all the
specific acts she related on voir dire, the harm would have been more apparent. However,
had the State qualified Schraeder to give her opinion as to Manning's character, not just
his reputation, all these specific acts would have been admissible anyway as prior "bad
acts" under Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)(1).



Â Â Â Â Â Â Â Â Â Â Second, after Schraeder testified for the State, Manning's counsel essentially turned
her into a witness for the defense. On cross-examination, defense counsel questioned
herâand she testified at lengthâabout the terms and conditions of community supervision
and about the procedures involved in a revocation of community supervision. Although the
jury did not recommend community supervision in its verdict, this was testimony in support
of Manning's application for community supervision that he was able to get before the jury
through the State's own witness.
Â Â Â Â Â Â Â Â Â Â Third, Schraeder was not the only witness the State called at the punishment
hearing. The jury also heard from Janice Peterson, daughter of Katherine Bonner, the
deceased victim, that her mother was a good person and is missed. The jury was also
able to consider the evidence introduced at the guilt/innocence stage of trial. 
Â Â Â Â Â Â Â Â Â Â Fourth, the State's focus in its closing argument was not on Schraeder's testimony,
but on the evidence presented during the guilt/innocence phase showing that Manning had
a cocaine metabolite in his blood during the accident and on the fact that Manning
presented no witnesses on his behalf at the penalty phase. The State barely mentioned
Schraeder's reputation testimony, and only talked about Manning's appearance at court
with alcohol on his breath in response to defense counsel's argument about that matter. 
Â Â Â Â Â Â Â Â Â Â Â Finally, although this case involved the tragic death of an innocent person, and the
State asked for the maximum punishment of twenty years' imprisonment, the jury assessed
only ten years' imprisonment. We recognize that Manning was eligible for community
supervision and that the jury rejected his request for that leniency. We cannot say,
however, that the erroneous admission of Schraeder's reputation testimony made the
difference in Manning not receiving community supervision. 
Â Â Â Â Â Â Â Â Â Â In light of the entirety of this record and the testimony admitted before the jury, we
do not have the requisite "grave doubt" that the error made by the court in admitting
unsupported testimony that Manning had a bad reputation influenced the jury more than
slightly. The contention of error is overruled.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JusticeÂ 


Date Submitted:Â Â Â Â Â Â October 28, 2003
Date Decided:Â Â Â Â Â Â Â Â Â November 19, 2003

Publish



mso-first-header:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-188-CR%20State%20v.%20Wilson%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00188-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF
TEXAS, Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JAMIE LEA WILSON, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 354th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Hunt County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 26057

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
State appeals[1]
the trial courtÂs ruling granting a motion to suppress filed by Jamie Lea
Wilson after her arrest for possession of methamphetamine in an amount of four
or more but less than 200 grams.Â  We
affirm the trial courtÂs ruling.Â  

I.Â Â Â Â Â Â Â Â Â  FACTUAL AND PROCEDURAL
HISTORY 

Â Â Â Â Â Â Â Â Â Â Â  Officer Stephen
Brownlow was contacted Âregarding a tip involving drug activity.ÂÂ  Over the telephone, an informant revealed
that Âthere would be a gold, Chevy Blazer expected eastbound on Highway 66
within 15 minutes of [when] we receive[d the] information, and there would be
two females in the vehicle and that they would be carrying about four ounces of
methamphetamine.Â 

Â Â Â Â Â Â Â Â Â Â Â  Brownlow
located a gold Chevy Blazer and Âfollowed it through townÂ for approximately
five minutes.Â  No traffic or other
violation was committed.Â  The vehicle
pulled into the driveway of a private residence behind a local church and
parked in front of another vehicle.Â 
Brownlow turned on the patrol car lights as the Blazer came to a
stop.Â  Jennifer Rossignol was driving the
Blazer while carrying passenger Wilson.Â 
Brownlow testified that Âwhen I stopped the vehicle, the driver got outÂ
and Âtried to walk over to the house.Â  I
told her to stop and come back to the vehicle.ÂÂ 
RossignolÂs driverÂs license was expired.Â  

Â Â Â Â Â Â Â Â Â Â Â  Brownlow
testified Wilson Âwas reaching down -- she turned away from the patrol -- from
us and our view, the front of her body was facing away, and she was digging
down in her pants like this like she was either stuffing, reaching, or
scratching something.Â  So immediately
suspicious.ÂÂ  Fearing Wilson might have a
weapon, Brownlow instructed her to Âget her hands out of her pants.ÂÂ  When she turned around, Brownlow observed Âa
cylindrical shaped object on the side of her leg.ÂÂ  Prior to the commencement of a pat-down
search, Wilson voluntarily retrieved methamphetamine from her pants.Â  She was arrested for possession of
methamphetamine. 

II.Â Â Â Â Â Â Â  STANDARD OF REVIEW 

Â Â Â Â Â Â Â Â Â Â Â  We
review the trial courtÂs decision to grant WilsonÂs motion to suppress evidence
by applying a bifurcated standard of review.Â 
Graves v. State, 307 S.W.3d 483,
489 (Tex. App.ÂTexarkana 2010, pet. refÂd);
Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.ÂTexarkana 2009, pet.
refÂd).Â  

Â Â Â Â Â Â Â Â Â Â Â  Because
the trial court is the exclusive trier of fact and judge of witness credibility
at a suppression hearing, we afford almost total deference to its determination
of facts supported by the record. Â State
v. Ross, 32 S.W.3d 853, 856Â57 (Tex. Crim. App. 2000); Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).Â 
We also afford such deference to a trial courtÂs ruling on application
of law to fact questions, also known as mixed questions of law and fact, if the
resolution of those questions turns on an evaluation of credibility and
demeanor.Â  Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996).Â  

Â Â Â Â Â Â Â Â Â Â Â  While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on
questions not turning on credibility.Â  Carmouche, 10 S.W.3d at 332; Guzman, 955 S.W.2d at 89; Graves, 307 S.W.3d at 489. Â Since all evidence is viewed in the light most
favorable to the trial courtÂs ruling, we are obligated to uphold the granting
of WilsonÂs motion to suppress if it was supported by the record and was
correct under any theory of law applicable to the case.Â  Carmouche,
10 S.W.3d at 328; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

III.Â Â Â Â Â Â  ANALYSIS

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Burden of Proof

Â Â Â Â Â Â Â Â Â Â Â  When
a defendant seeks to suppress evidence on the basis of an illegal search or
seizure, the burden of proof is placed initially upon the defendant.Â  Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).Â  A defendant meets the initial burden of proof
by establishing that a search or seizure occurred without a warrant, shifting
the burden of proof to the State.Â  Id.Â 
If the State is unable to produce evidence of a warrant, it must prove
the reasonableness of the search or seizure.Â 
Id.Â  Here, the suppression hearing began with the
State stipulating this case involved a warrantless arrest.Â  This stipulation shifted the burden of proof
to the State.Â  See id. 

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  BrownlowÂs Seizure of Wilson Was an
Investigative Detention 

Â Â Â Â Â Â Â Â Â Â Â  The
Texas Court of Criminal Appeals recognizes three categories of interactions
between police officers and citizens: Â arrests,
investigative detentions, and encounters.Â 
State v. Perez, 85 S.W.3d 817,
819 (Tex. Crim. App. 2002). Â Citing State
v. Priddy, the State argues that BrownlowÂs interaction with Wilson was an
encounter which did not require probable cause or reasonable suspicion.Â  321 S.W.3d 82, 87 (Tex. App.ÂFort Worth 2010,
pet. refÂd).Â  In Priddy, our sister court correctly stated that during encounters, Â[l]aw
enforcement officers are permitted to approach individuals without probable
cause or reasonable suspicionÂ because although Â[s]uch interactions may
involve inconvenience or embarrassment . . . they do not involve official
coercion.Â Â Id. (citing Florida v. Royer,
460 U.S. 491, 497Â98 (1983); State v.
Garcia-Cantu, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); State v. Velasquez, 994 S.W.2d 676, 678
(Tex. Crim. App. 1999)). 

Â Â Â Â Â Â Â Â Â Â Â  The
lack of requirement for probable cause or reasonable suspicion is premised on
the theory that Â[u]nlike an investigative detention or an arrest--each a
seizure for Fourth Amendment purposes--an encounter is a consensual
interaction, which the citizen may terminate at any time.ÂÂ  Id.
at 86 (citing Gurrola v. State, 877
S.W.2d 300, 302Â03 (Tex. Crim. App. 1994)).Â 
ÂSo long as the citizen remains free to disregard the officerÂs
questions and go about his or her business, the encounter is consensual and
merits no further constitutional analysis.ÂÂ 
Id. (citing California v. Hodari D., 499 U.S. 621,
628 (1991); Johnson v. State, 912
S.W.2d 227, 235 (Tex. Crim. App. 1995)).Â 
The test also has been stated that Âin order to determine whether a
particular encounter constitutes a seizure, a court must consider all the
circumstances surrounding the encounter to determine whether the police conduct
would have communicated to a reasonable person that the person was not free to
decline the officersÂ requests or otherwise terminate the encounter.Â Â Florida
v. Bostick, 501 U.S. 429, 439 (1991).

Â Â Â Â Â Â Â Â Â Â Â  The
facts of this case do not indicate a consensual encounter.Â  Brownlow had been driving behind the Blazer
for approximately five minutes before he followed it into the driveway of a
private residence.Â  He turned on his
patrol car lights as the vehicle came to a stop.Â  When the driver of the vehicle exited the
Blazer and began walking toward the house, Brownlow Âtold her to stop and come
back to the vehicle.ÂÂ  This command, by
the uniformed officer given after initiation of patrol car lights, would
communicate to reasonable persons that they were not free to decline the
officerÂs requests or otherwise terminate the encounter. Â Therefore, BrownlowÂs seizure of Wilson
implicated Fourth Amendment protections.Â 


Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Reasonable Suspicion Was Required 

Â Â Â Â Â Â Â Â Â Â Â  The
Fourth Amendment prohibits Âunreasonable searches and seizures.Â Â U.S.
Const. amend. IV.Â  This
prohibition extends to Âbrief investigatory stops such as the stop of [a]
vehicle.Â United States v. Cortez,
449 U.S. 411, 417 (1981); see Corbin v.
State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).Â  

Â Â Â Â Â Â Â Â Â Â Â  Law
enforcement officers may stop and briefly detain persons suspected of criminal
activity on less information than is constitutionally required for probable
cause to arrest.Â  Terry v. Ohio, 392 U.S. 1, 22 (1968).Â  To initiate an investigative stop, the
officer must possess a reasonable suspicion based on specific, articulable
facts that in light of the officerÂs experience and general knowledge, would
lead the officer to the reasonable conclusion that criminal activity is
underway and the detained person is connected to the activity.Â  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Â Such a stop must be objectively reasonable in
light of the particular circumstances of the case.Â  Maryland
v. Wilson, 519 U.S. 408, 411 (1997); Terry,
392 U.S. at 21Â22; Corbin, 85 S.W.3d
at 276.Â  Reasonableness depends on Âa
balance between the public interest and the individualÂs right to personal
security free from arbitrary interference by law enforcement.ÂÂ  Corbin,
85 S.W.3d at 276 (quoting Wilson, 519
U.S. at 411).Â  

D.Â Â Â Â Â Â Â  The
Investigative Detention Without Reasonable Suspicion Was Unreasonable

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  1.Â Â Â Â Â Â Â Â  The Anonymous Tip

Â Â Â Â Â Â Â Â Â Â Â  An
investigative stop need not be based on personal observation, but may be based
on an informantÂs tip that bears sufficient Âindicia of reliabilityÂ to justify
a stop.Â  See Adams v. Williams, 407 U.S. 143, 147 (1972).Â  The State argues BrownlowÂs detention was
reasonable given the informantÂs tip.Â  

Â Â Â Â Â Â Â Â Â Â Â  An
anonymous telephone call rarely will, standing alone, establish the requisite
level of reasonable suspicion because Âan anonymous tip alone seldom
demonstrates the informantÂs basis of knowledge or veracity.Â Â Gilmore
v. State, 323 S.W.3d 250, 258 (Tex. App.ÂTexarkana 2010, pet. refÂd)
(citing Alabama v. White, 496 U.S.
325, 329 (1990); Florida v. J.L., 529
U.S. 266, 270 (2000)).Â  

Â Â Â Â Â Â Â Â Â Â Â  After
a hearing, the trial court granted the motion to suppress the evidence found as
a result of the search.Â  The trial court
was in the best position to observe and determine the reasonableness and
credibility of the testimony.Â  When the
trial court makes no specific findings of historical fact, we presume it made
those findings necessary to support its ruling, provided they find support in
the record.Â  Carmouche, 10 S.W.3d at 327Â28.Â 
The evidence appears to support the trial courtÂs implicit conclusion
that the informantÂs information was, in the inception, classified as an anonymous
tip. 

Â Â Â Â Â Â Â Â Â Â Â  Brownlow
originally stated in his report that the informant was anonymous, but at the
suppression hearing, he testified that the informant was a confidential
informant whom Brownlow knew at the time he was contacted.Â  Later, Brownlow qualified that account and
stated that the informant was identified Â[w]hen the report was done.ÂÂ  When later questioned by the trial judge,
Brownlow stated that he did not know the informant, and the reliability of the
informant could only be established by corroboration of information.[2]Â  No attempt was made to present evidence that
the informant had given other reliable information in the past.Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  2.Â Â Â Â Â Â Â Â  Corroboration of the
Tip

Â Â Â Â Â Â Â Â Â Â Â  To
provide reasonable suspicion for an investigative detention, an anonymous tip
must be Âsuitably corroborated or otherwise exhibiting sufficient indicia of
reliability.ÂÂ  Gilmore, 323 S.W.3d at 258 (citing J.L., 529 U.S. at 270).Â 
Police can provide other indicia of reliability by independent
corroboration of the informantÂs information.Â 
Id. (citing Illinois v. Gates, 462 U.S. 213, 236
(1983); Cassias v. State, 719 S.W.2d
585, 590 (Tex. Crim. App. 1986) (op. on rehÂg)).Â  

Â Â Â Â Â Â Â Â Â Â Â  Brownlow
claimed he found DonahueÂs tip reliable because Âhe was her boyfriend so I
guess he had intimate knowledge of [WilsonÂs] activities.Â  He knew exactly what road she was on, knew
what time frame, . . . . He knew thereÂd be two females in the vehicle.Â  It was a gold Chevy Blazer, which are pretty
rare.ÂÂ  In general, corroboration of mere
innocent details is insufficient to corroborate an anonymous tip.Â  Id.Â  BrownlowÂs independent corroboration must
establish that the anonymous tip is Âreliable in its assertion of illegality,
not just in its tendency to identify a determinate person.ÂÂ  Id. (quoting
J.L., 529 U.S. at 271).Â  Â[T]he corroboration of details that are
easily obtainable at the time the information is provided, and which do not
indicate criminal activity, will not lend support to the tip.ÂÂ  Id. at
258Â59.Â  The trial court could conclude
that the testimony recited above only established corroboration of innocent
details. 

Â Â Â Â Â Â Â Â Â Â Â  This
case is remarkably similar to the facts of Smith
v. State, 58 S.W.3d 784 (Tex. App.ÂHouston [14th Dist.] 2001, pet. refÂd). Â In Smith,
police received a tip from SmithÂs girlfriend[3] that
Smith would have heroin in his vehicle northbound on Highway 6 between 6:00 and
8:00 p.m. Â She described the vehicle,
license number, and explained Smith would have two passengers.Â  Shortly after 6:00, Smith was in the vehicle
and place as described with two passengers; he was stopped and heroin was found.Â  Even though the informant had given
information in the past, it could not be verified that it was reliable.Â  The court thought it was relevant that the
informant had not explained the reason for turning in this information on her
boyfriend or whether she could have an ulterior motive.Â  Id. at 791.

Â Â Â Â Â Â Â Â Â Â Â  As
in this case, the State argued that the tip had been corroborated, but the
Fourteenth Court held that the corroboration was of easily obtainable details
and did not furnish a basis for reasonable suspicion.Â  Id.
at 792 (citing Garcia v. State, 3
S.W.3d 227, 235 (Tex. App.ÂÂHouston [14th Dist.] 1999, no pet.) (accurate
description of subjectÂs location and appearance is reliable in identifying
person accused, but does not show tipster has knowledge of concealed criminal
activity)).Â  We recited in Gilmore that an innocent detail may
corroborate an anonymous tip when the tip correctly predicts future movements
of the suspect if the travel involves unusual itineraries.Â  Gilmore,
323 S.W.3d 259.Â  When the travel
itinerary is more commonplace, knowledge of a suspectÂs travel plans may not be
sufficient.Â  Id. (citing Smith, 58
S.W.3d at 793) (finding no reasonable suspicion for various reasons, including
that travel was down Âwell traveled corridorÂ).Â 
There is no testimony that the highway route taken by Rossignol and
Wilson was unusual. 

Â Â Â Â Â Â Â Â Â Â Â  However,
the State argues that the following transcript established corroboration of
travel plans:

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  In the -- in the time that you were
going to go try to investigate Ms.Â Wilson traveling with narcotics, there
was further conversation between Mr.Â Donahue and Ms. Wilson in regard to
trying to get her to go and stop and get a hamburger and try to slow her down a
little bit; is that right?Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Correct.Â 


Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And she actually did that; is that
right? 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Correct.Â 


Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And she had food there, including a
hamburger, when you actually made the stop of the vehicle.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yeah.Â 
Ms. Rossignol was eating a Sonic burger.Â 
I told her to go back to the vehicle and she started eating a Sonic
burger.Â  

Â 

There is no indication that the
burger belonged to Wilson or that Rossignol and Wilson had in fact stopped at
Sonic after DonahueÂs tip.Â  

Â Â Â Â Â Â Â Â Â Â Â  Moreover,
Â[w]e look only at the facts known to the officer at the inception of the stop;
an initially unlawful stop is not validated by the discovery of criminal activity.Â  Tanner
v. State, 228 S.W.3d 852, 855 (Tex. App.ÂAustin 2007, no pet.) (citing Wong Sun v. United States, 371 U.S. 471,
484 (1963).Â  Because Brownlow did not
discover the existence of the burger until after initiation of the
investigative detention, this information could not be used to corroborate the
tip.Â  Similarly, we disregard evidence
cited by the State regarding WilsonÂs mannerisms after the detention, as well
as BrownlowÂs testimony that DonahueÂs tip was corroborated because he knew
Âthe exact amount of drugs she was carrying.ÂÂ 


Â Â Â Â Â Â Â Â Â Â Â  Viewing
the evidence in the light most favorable to the trial courtÂs ruling, we give
deference to the trial courtÂs fact-finding that the anonymous tip by Donahue
was not sufficiently corroborated prior to initiation of the investigative
detention.Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  3.Â Â Â Â Â Â Â Â  Other Evidence of
Reasonable Suspicion 

Â Â Â Â Â Â Â Â Â Â Â  Brownlow
testified that the residence Âhad been abandoned Â or unoccupied for some
time,Â and was a Âfrequent[] target[] of burglary and theft.ÂÂ  During cross-examination, Brownlow admitted
that he had no knowledge of whether the house was currently occupied, and we
have stated before that Â[t]he fact that there had been [criminal] activity in
the area, but not known to have been committed by the defendant, is not
sufficient to corroborate an anonymous tip.ÂÂ 
Johnson v. State, 146 S.W.3d
719, 722 (Tex. App.ÂTexarkana 2004, no pet.).Â 


Â Â Â Â Â Â Â Â Â Â Â  After
reviewing the record, we conclude deference is warranted to the trial courtÂs
determination that the State failed to meet its burden of proof to demonstrate
Brownlow had reasonable suspicion prior to initiation of the investigative
detention. 

IV.Â Â Â Â Â Â  CONCLUSION


Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment. 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JackÂ  Carter 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  March 9, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  March 18, 2011

Â 

Publish











[1]The
StateÂs appeal was made in accordance with our Code of Criminal Procedure,
authorizing us to exercise jurisdiction. Â Tex.
Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2010).





[2]Brownlow
later divulged the informantÂs identity as WilsonÂs boyfriend, Jacob Donahue. Â As set forth below, the record is unclear
whether the informantÂs identity was known at the time of the telephone call,
or was deciphered at a later date:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  . . . you actually spoke with the informant, and his name
was Jacob Donahue; is that correct?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Correct. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  Mr. Donahue is obviously identified or was identified at
the time; is that correct?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  And you thought he was credible; is that correct?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  Did he relay information to you concerning the fact that
his girlfriend, Jamie Lea Wilson, was engaged in drug activity?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  . . . .

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  The - and part of that also the - the informant, that you
originally listed as anonymous because you didnÂt want to disclose the person -

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  - for h[is] safety reasons -

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  But, actually, it was just uniden [sic] - it was just
actually at the time was not disclosed. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  ThatÂs correct. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  Let me refer to that for the record.Â  He was disclosed and you knew who he was at
the time.Â  Right?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Yes.Â  When the
report was done. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â Â Â Â Â  It just stated he was anonymous and a supplement
clarified that; is that correct?

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â Â Â Â  Correct. 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  This
testimony gave rise to the courtÂs questioning of Brownlow in which he stated
he did not know Donahue.Â  Based on this
record, the trial court could have found Donahue was anonymous at the time of
the call, except for his identification as WilsonÂs boyfriend.Â  In any event, the State does not argue that
Donahue was a named informant, but argues the information from the informant
was corroborated by WilsonÂs suspicious behavior. 





[3]The
girlfriend had previously given the police Âinformation.Â